Case No.: 14-15317

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CROWN CHEVROLET, a California corporation,<br><br>Plaintiff - Appellant,<br><br>vs.<br><br>GENERAL MOTORS, LLC, a Delaware limited liability company; et al.,<br><br>Defendant - Appellees. | Appeal from the U.S. District Court Northern District of California, San Francisco Division's Order Granting Motion to Dismiss Plaintiff's Second Amended Complaint.<br><br>D.C. No. 3:13-cv-01362-THE |

### APPELLANT CROWN CHEVROLET'S OPENING BRIEF

MLG AUTOMOTIVE LAW, APLC
A Professional Law Corporation
Jonathan A. Michaels, Esq. – State Bar No. 180455
Kathryn J. Harvey, Esq. – State Bar No. 241029
2801 W. Coast Highway, Suite 370
Newport Beach, CA 92663
Telephone: (949) 581-6900
Facsimile: (949) 581-6908
(jmichaels@mlgautomotivelaw.com)
(kharvey@mlgautomotivelaw.com)

Attorneys for Plaintiff – Appellant, Crown Chevrolet

CIRCUIT RULE 26.1    DISCLOSURE STATEMENT

Appellate Court No: 14-15317

Short Caption: Crown Chevrolet v. General Motors, LLC.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Crown Chevrolet, a California Corporation.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

MLG Automotive Law, APLC, formerly Michaels Law Group, APLC.

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

None

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

None

Attorney's Signature: s/ Jonathan Michaels          Date: 6/2/14
Attorney's Printed Name: Jonathan Michaels

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes  X    No _____

Address: 2801 w. Coast Hwy., Suite 370
         Newport Beach, CA 92663

Phone Number: 949-581-6900          Fax Number: 949-581-6908

E-Mail Address: jmichaels@mlgautomotivelaw.com

rev. 01/08 AK

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION……………..……………………………….1

STATEMENT OF ISSUES PRESENTED FOR REVIEW……………………..1

STATEMENT OF THE CASE……………………………………………..…...1

RELEVANT PRECEDURAL HISTORY………………………………..……..6

STANDARD OF REVIEW……………………………………………….…....7

LEGAL DISCUSSION……... ………………………………………..............…7

    A. Plaintiff – Appellant's Claims Are Within the Statute of

       Limitations Period………..……………………………………..……..7

         1. Plaintiff – Appellant's Racketeering Claim is Within

           the Applicable Statute of Limitations Period. …………………........7

         2. Plaintiff – Appellant's Claim for Unfair Business Practices

           is Within the Applicable Statute of Limitations Period………….12

CONCLUSION…………………………………………………………….…..13

STATEMENT OF RELATED CASES……………………………………...…13

CERTIFICATE OF SERVICE…………………………………………………14

CERTIFICATE OF COMPLIANCE…………………………………………...15

# TABLE OF AUTHORITIES

## CASES

*Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185 (2013…………..…..….12

*Beneficial Standard Life Insurance Co. v. Madariaga*, 851 F. 2d 271,275 (1988 9th Cir…..………………………………………………………………………..8

*Cahill v. Liberty Mutual Ins. Co.*, 80 F. 3d 336 (1996 9th Cir.) …..……………..5

*Grimmett v. Brown*, 75 F.3d 506 (9th Cir.1996) ……………………….....……..7

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987)…………………………………………………………………….7

*Living Design, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F. 3d 353, 365 (2005 9th Cir.) …..……………………………………………………………….8

*Pincay v. Andrews*, 238 F. 3d 1106 (9th Cir. 2001) ……………………………...7

*Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F. 2d 588 (1990 9th Cir.)…..8

## STATUTES

28 U.S.C. §1331…………………………………………………...…………….1

28 U.S.C. § 1441(b). ……………………………………………………………..1

Cal. Bus. & Prof. Code §17208..……………….. ……………….....…………..12

Cal. Const., Art. VI, §11………………………………………………….....1

Federal Rule of Civil Procedure 12(b)(6)…… ………………………………….5

**APPELLANT CROWN CHEVROLET'S OPENING BRIEF**

## STATEMENT OF JURISDICTION

The United States District Court Northern District of California had subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1441(b). There is federal question jurisdiction because the Second Amended Complaint asserts claims that arise under the Racketeer Influenced and Corrupt Organization Act, a federal statute. This appeal is made based on the district court's improper interpretation of the statute of limitations in this case. The United States Court of Appeals for the Ninth Circuit has jurisdiction to appeal pursuant to Cal. Const., Art. VI, §11. The date of entry of the Order appealed from is January 22, 2014. The date of filing of the Notice of Appeal is February 20, 2014. This appeal is timely under Federal Rules of Appellate Procedure Rule 4, as the Notice of Appeal was filed with the district clerk within 30 days after the entry of the Order appealed from.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the district court committed reversible error when it concluded that the statute of limitations barred Plaintiff – Appellant Crown Chevrolet's claims in its Second Amended Complaint.

## STATEMENT OF THE CASE

Plaintiff – Appellant Crown Chevrolet is a California corporation domiciled in Dublin, California. Crown has been a franchised General Motors dealership in Dublin, California since 1961. Defendant – Appellee Ally Financial, Inc. is a

1

Delaware corporation that is the successor-in-interest to GMAC Inc., GMAC Financial Services LLC, GMAC LLC, and General Motors Acceptance Corporation. Ally served as the inventory "floorplan" lender for Crown Chevrolet. Defendant – Appellee Randy Parker is an individual who was employed by Old GM, and then by New GM, as the Western Regional Director for Chevrolet. Defendant – Appellee James Gentry is an individual who was employed by Old GM as a Zone Manager and a Market Area Manager, from 1998 through 2004. From 2004 to 2010, Gentry was employed as a Regional Dealer Network Manager, first by Old GM, and then by New GM. In 2010, Gentry became employed by non-party California Automotive Retailing Group, Inc. (CARG), as its Chief Operating Officer. Defendant – Appellee Kevin Wrate is an individual employed by Defendant – Appellee Ally Financial Inc., as Director of Sales.

In the 2000s, with Old GM's market share declining, Defendants – Appellees developed a plan to strengthen GM's position in the San Francisco East Bay market. (SAC ¶13.) In furtherance of this plan each of the Defendants – Appellees, along with non-parties Dosanjh, CARG and Old GM formed a racketeering enterprise through which they would direct their efforts to strengthen GM's position in the San Francisco East Bay Market. *Id.* Non-party General Motors LLC ("GM" or "New GM") also joined this enterprise when it was formed

on May 29, 2009. *Id.* Defendants – Appellees' plan to strengthen GM's position in the market worked as follows: Wrate would use his position as a manager at Ally to assert unmerited financial pressure on dealerships in the San Francisco East Bay market, sending the dealerships letters wherein Ally would impose exorbitant curtailments on the dealerships. (SAC ¶16.) Once the targeted dealerships had suffered enough financial pressure, Defendants – Appellees Gentry and Parker would swoop in and, using their position of power with Old GM and later New GM, strong-arm the dealerships into selling to Dosanjh and CARG. (SAC ¶17.) If this plan did not work, the Defendants – Appellees would assert even further pressure, so that the targeted dealerships would have no choice but to close their doors, thus eliminating Dosanjh's competition in the marketplace. (SAC ¶14, ¶17.) Dosanjh would then provide the GM managers with illegal kickbacks, and allow them to control the operations of the dealerships. (SAC ¶14.) With this, the GM managers were able to enrich themselves personally, GM was able to gain control over the San Francisco East Bay market, and Ally was able to obtain millions of dollars from the dealerships and theirs owners that it otherwise would not have received. *Id.*

Plaintiff – Appellant Crown Chevrolet is a dealership in the San Francisco East Bay Market that was targeted for control by Dosanjh and CARG. (SAC ¶22.) In 2008, in furtherance of their plan to transition Crown's dealerships to

3

Dosanjh and CARG, Defendants – Appellees began asserting unmerited financial pressure on Crown. *Id.* To that end, Wrate began sending letters to Crown informing its owner, Pat Costello, that Ally would be both auditing Crown and imposing significant curtailments on Crown. *Id.* Ally and Wrate demanded that these significant curtailments be paid monthly. *Id.* These exorbitant curtailments reached as high as $400,000 for a one-time payment. *Id.* Then, when the curtailments imposed by Ally began to take its toll on Crown, Parker contacted Costello and told him that Crown needed to sell its dealerships to Dosanjh, claiming that Dosanjh was the only candidate that GM would approve to purchase the dealerships. (SAC ¶¶24, 32.) As a result of the financial pressure asserted by the Defendants – Appellees, and with no other choice, Crown sold its Cadillac franchise in September 2008, and its Chevrolet franchise in October 2008.

The sale of each of Crown's dealerships were structured such that Crown received an initial cash payment upon sale of the dealership. (SAC ¶¶25, 34.) These cash payments were far less than the fair market value of the dealerships. *Id.* Therefore, to make up the difference between the cash purchase price and the dealerships' fair market value, Dosanjh and Crown also entered into "side deals" wherein Dosanjh and CARG would provide Crown with additional consideration for the sale over a period of time. (SAC ¶¶26, 35.) The inclusion of these side deals, when coupled with the cash purchase price for the dealerships, equated to

4

what Crown believed was fair market value for the dealerships. *Id.* It was not until several months later, in June 2009, that Crown discovered that Dosanjh and CARG would not fulfill the terms of their side deals with Crown, and that in fact, Dosanjh and CARG never had any intention of fulfilling the terms. (SAC ¶47.) Thus, Crown realized for the first time in June 2009 that it had sold its dealerships for what ultimately equated to much less than their fair market value.

For purposes of a Motion to Dismiss, the lower district court had to assume the Plaintiff's allegations are true, and was required to construe the complaint in the light most favorable to the Plaintiff. Federal Rule of Civil Procedure 12(b)(6); *Cahill v. Liberty Mutual Ins. Co.*, 80 F. 3d 336, 337-338 (1996 9th Cir.) Taking all the statements in the Second Amended Complaint as true, Plaintiff – Appellant satisfies the pleading requirements for both causes of action alleged. Ultimately, through their pattern of fraud and racketeering, Defendants – Appellees forced Crown to sell its Cadillac and Chevy franchises to Dosanjh and CARG for much less than fair market value. (SAC ¶¶22-49.) Crown, having only learned of this injury in June 2009, filed suit to recover damages he suffered as a result of Defendants' wrongful conduct. The facts alleged in the Second Amended Complaint, which the lower district court had to assume to be true for purposes of the Motions to Dismiss, indicate that Plaintiff – Appellant has overcome the statute of limitations in both of its causes of action. The four year statute of

limitations began to run in June 2009, when Plaintiff – Appellant discovered and had enough information to discover its injury. As a result, Defendants – Appellees' Motions to Dismiss should have been denied.

## **RELEVANT PROCEDURAL HISTORY**

On October 2, 2013, Plaintiff – Appellant Crown Chevrolet filed a Second Amended Complaint in the United States District Court Northern District of California, San Francisco Division. (Excerpts of the Record Vol. 2, Document 69). On October 23, 2013, Defendants – Appellees filed Motions to Dismiss the Second Amended Complaint. (Excerpts of the Record Vol. 2, Documents 74 and 75). On November 15, 2013 Plaintiff – Appellant Crown Chevrolet filed a Consolidated Opposition to Defendants' Motions to Dismiss the Second Amended Complaint. (Excerpts of the Record Vol. 2, Document 80). On November 26, 2013 and November 27, 2013, Defendants – Appellees filed Replies in Support of the Motions to Dismiss the Second Amended Complaint. (Excerpts of the Record Vol. 2, Documents 81 and 82). On January 13, 2014, the U.S. District Court Northern District of California, San Francisco Division held oral arguments on the issue of the Motion to Dismiss the Second Amended Complaint. (Transcript of the Proceeding located in Excerpts of the Record Vol. 2, Document 92). On January 22, 2014, the U.S. District Court Northern District of California, San Francisco Division entered an Order Granting Defendants – Appellee's Motions to Dismiss,

based solely on the grounds that Plaintiff – Appellant Crown Chevrolet's claims were barred by the statute of limitations. (Excerpts of the Record Vol. 2, Document 87).

## STANDARD OF REVIEW

This is an appeal of a Final Order Granting Defendants – Appellees' Motion to Dismiss Plaintiff – Appellant's Second Amended Complaint, based on the finding that the statute of limitations bars Plaintiff – Appellant's claims. The Court reviews Issue One *de novo*. Under a *de novo* standard of review, this Court owes no deference to the district court's interpretation of the statute of limitations issue.

## LEGAL DISCUSSION

### A. Plaintiff – Appellant's Claims are within the Statute of Limitations Period.

#### 1. Plaintiff – Appellant's Racketeering Claim is Within the Applicable Statute of Limitations Period.

The statute of limitations for a RICO claim is four years. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.,* 483 U.S. 143, 156 (1987). In the Ninth Circuit, the accrual date for civil RICO claims is determined by application of the "injury discovery" rule. *Pincay v. Andrews,* 238 F. 3d 1106, 1109 (9th Cir. 2001) [citing *Grimmett v. Brown,* 75 F. 3d 506, 511 (9th Cir.1996)]. Under this rule, the civil RICO limitations period begins to run when

a plaintiff knows or should know of the injury that underlies his cause of action. *Id.* A party should know of an injury if he has enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the claim. See *Id.* at 1110 [citing *Beneficial Standard Life Insurance Co. v. Madariaga,* 851 F. 2d 271, 275 (1988 9th Cir.)]. "[W]here the issue of limitations requires determination of when a claim begins to accrue, the complaint should be dismissed only if the evidence is so clear that there is no genuine factual issue and the determination can be made as a matter of law." *Sisseton-Wahpeton Sioux Tribe v. United States,* 895 F. 2d 588, 591 (1990 9th Cir.). Further, normally, a court must leave the question of whether a plaintiff knew or should have known of his injury to the jury. *Living Design, Inc. v. E.I. Dupont de Nemours & Co.,* 431 F. 3d 353, 365 (2005 9th Cir.) (citing *Beneficial Standard Life Ins. Co. v. Madariaga,* 851 F. 2d at 275).

Here, Crown suffered injury when, as a result of Defendants – Appellees' racketeering activity, it was forced to sell its Cadillac and Chevy franchises to Dosanjh and CARG. However, Crown did not know, and could not have been expected to know, of its injury at the time of the sale. All of the facts surrounding Crown's complaint took place in 2008 and early 2009, a very difficult time for the automotive industry. At the time the facts surrounding the Second Amended Complaint were taking place, the future of the automotive industry, and in

8

particular Old GM, was bleak. Old GM was facing financial devastation, and dealerships were closing throughout the United States. When Crown received letters from Ally imposing curtailments and demanding audits, it reasonably believed that the actions of Ally were legitimate given the times. There was no reason for Crown to suspect that Ally and Wrate were in a scheme to defraud him, in order to transition San Francisco East Bay dealerships to Dosanjh. Crown only knew only that it was under extreme financial pressure, and that it was selling its Cadillac and Chevy franchises to the only dealer Old GM told Crown they were willing to approve. Moreover, although the cash price for each of Crown's two dealerships were less than fair market value, Crown also entered into side deals with Dosanjh and CARG; the value of these side deals placed the sale of each of the dealerships at within fair market value range. Thus, Crown did not suspect any wrong doing on the part of Defendants.

Defendants – Appellees' Motions to Dismiss argue that Crown should have known of any injury in November 2008, the first time that Dosanjh informed Crown that it was unable to comply with the terms of the side agreements. This argument ignores the fact that although Dosanjh informed Crown that he was unable to *immediately* comply with the terms of the side agreement, Dosanjh assured Crown that he fully intended to comply with the terms, and in fact made payments toward the agreements in September, October and November 2008.

(SAC ¶¶39-41.) Dosanjh then met with a representative of Crown two to three times *per week* and assured Crown that payment was forthcoming. (SAC ¶43.) Again, this was a dire time in the automotive industry. Crown reasonably believed that Dosanjh and CARG were struggling financially and that Dosanjh fully intended to comply with the terms of his agreements with Crown. Simply because Dosanjh and CARG were late on payments did not put Crown on notice of his injury; had CARG and Dosanjh eventually made the payments, Crown would have received the fair value of the dealerships. Thus, Crown had absolutely no knowledge of his injury, as he believed he would still get the fair market value of the dealerships through these side agreements, perhaps just a little later than expected. It was only when Dosanjh *refused* to fulfill the terms of the agreements that Crown discovered that Dosanjh had no intention of *ever* fulfilling the terms, and that Crown had therefore sold its dealerships for significantly less than fair market value. (SAC ¶47.) This was the first time that Crown could possibly have been expected to have known of its injury.

At the heart of Crown's claims against Defendants – Appellees is a fraudulent scheme by Defendants – Appellees to use their power and influence to transition dealerships in the East Bay to Dosanjh and to give GM an advantage in the area. Given the financial state of the automotive industry at the time, Crown had no reason to suspect that the demands made of him were anything other than a

legitimate request in response to a difficult time. Crown certainly had no reason to suspect that Defendants – Appellees' were forcing the sale of Crown's dealerships to Dosanjh, or that being forced to sell its franchises was in fact an injury. Further, a reasonable person in Crown's position (i.e., a dealership suffering extreme financial pressure from its lending institution, and selling to what appears to be the only available buyer) would have no reason to believe that he needed to investigate the situation, as there are many situations in which an owner is forced to sell its franchise that do not involve fraud or racketeering activity. Thus the soonest that any reasonable person could be expected to investigate further would have been in June 2009, when Dosanjh refused to comply with terms of the side agreements, and thus it became clear that Crown had been forced to sell its dealership for less than fair market value. Until that time, Crown believed it had sold its dealerships for what amounted to fair market value. Moreover, had Crown's belief been true, Crown would have suffered no tangible damages as it would have received fair market value for the dealerships despite the fact that its sale to Dosanjh and CARG were as a result of Defendants' racketeering activities. Thus, the statute of limitations did not begin to run until June 2009.

Furthermore, the determination as to whether Crown was reasonably diligent in investigating its "injury", and whether that diligence should have been

exercised in late 2008 or in June 2009, is a question of fact that cannot be determined at the pleading stage. Thus, at this stage of the pleadings, the Court must find that Defendants – Appellees have not met their burden of proving the statute of limitations has run on this claim, and must deny Defendants – Appellees' Motions to Dismiss based on this grounds.

### 2. Plaintiff – Appellant's Claim for Unfair Business Practices is Within the Applicable Statute of Limitations Period.

The statute of limitations for a violation of Unfair Competition Law ("UCL") is four years. Bus. & Prof. Code, §17208. The time of accrual for an UCL cause of action is governed by the common law accrual rules for the underlying causes of action. *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1196 (2013). Thus, the statute of limitations for Unfair Business Practices is the same as for the Racketeering claim—four years. Crown has alleged that Defendants – Appellees engaged in unfair competition as a result of their racketeering activities. Therefore, for the same reasons addressed elsewhere herein, Crown contends that the statute of limitations on its unfair business practices claims did not begin to accrue until June 2009, the soonest that Crown could have been expected to discover his injury, or investigate Defendants – Appellees' unfair and fraudulent acts and racketeering activity.

## CONCLUSION

Based on the error committed by the lower court, as to the interpretation of the statute of limitations, Plaintiff – Appellant Crown Chevrolet respectfully requests that this Court grant this appeal.

## STATEMENT OF RELATED CASES

Pursuant to 9th Circuit Rule 28-2.6, there are no related cases pending in this Court.

**MLG Automotive Law, APLC**

Dated: June 2, 2014

By: /s/ Jonathan Michaels, Esq.
Jonathan A. Michaels, Esq.
Kathryn J. Harvey, Esq.
Attorneys for Plaintiff – Appellant, Crown Chevrolet

## CERTIFICATE OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 2801 W. Coast Highway, Suite 370, Newport Beach, CA 92663.

On June 2, 2014, I served true copies of the following document(s): **APPELLANT CROWN CHEVROLET'S OPENING BRIEF, EXCERPTS OF THE RECORD VOLUME I, AND EXCERPTS OF THE RECORD VOLUME II**

on all counsel of record who have consented to electronic service were served with a copy of the preceding document(s) via the United States District Court, Northern District of California CM/ECF system, as follows:

Gregory R. Oxford
Isaacs Clouse Crose & Oxford LLP
21515 Hawthorne Blvd., Suite 950
Torrance, CA 90503
goxford@icclawfirm.com
*Attorney for Randy Parker and James Gentry*

Donald H. Cram
Andrew S. Elliot
Severson & Werson, P.C.
One Embarcadero Center, 26th Flr
San Francisco, CA 94111
dhc@severson.com
ase@severson.com
*Attorney for Ally Financial, Inc. and Kevin Wrate*

I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct. I declare that I am a member of the Bar of this Court, or employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on June 2, 2014, in Newport Beach, California.

/s/ *Kianna C. Parviz, Esq.*

**Form 6.  Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    ☒ this brief contains  2,924  words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    ☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* Word 2010 *(state font size and name of type style)* 14 size and Times New Roman font , *or*

    ☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style)* _____ .

Signature  Jonathan Michaels

Attorney for  Plaintiff - Appellant Crown Chevrolet

Date  6/2/14

15